### McCOY, In re.

Ohio Appeals, Second District, Franklin County.

No. 5099.   Decided November 4, 1954.

Frank H. Kearns, Pros. Atty., Victor E. Vaile, Jr., Joseph Poorman, Asst. Pros. Attys., Columbus.

John H. Lewis, Columbus, for Henry McCoy, Grandparent.

(MONTGOMERY, PJ, of the Fifth District, GRIFFITH and NICHOLS, JJ., of the Seventh District, sitting by designation in the Second District.)

520

**OPINION**

By NICHOLS, J.

This cause is in this court on appeal on questions of law. The record discloses that an action for divorce was instituted in Franklin County Court of Domestic Relations by Olga A. McCoy against Jesse McCoy, the parties being the parents of Ruby McCoy, a child about three years of age. In that proceeding a divorce was granted to the plaintiff Jesse McCoy, the defendant, although served with summons did not appear and made no claim to the custody of the child. On consideration of the fact that the mother had previously been committed to the State Hospital for the Insane, and the further fact that she had no home in which to care for the child, the Domestic Relations Court made no order with relation to its custody, but pursuant to the statute certified the record to the Juvenile Branch of the Court of Domestic Relations of Franklin County for disposition as to the custody of the child. The Juvenile Court heard the testimony of a number of witnesses, including the testimony of the grandparents of the child, which disclosed that these grandparents had taken the child from infancy and had supported it in their own home and apparently had supplied it with the necessaries of life. The grandparents were claiming that they should be given the custody of the child. The Juvenile Court had before it evidence of the fact that Jesse McCoy, the father of the child, was an unfit person to have its custody; that the mother of the child was a proper person for its custody but that she had no home in which to rear it and she was required to work to support herself, the husband never having contributed anything toward her support.

The evidence further discloses that Jesse McCoy, the father of the child, had been accustomed to make his father's home his own residence, although for a short period of time before the hearing he was not living in the home of his parents. He had been charged with various offenses during the preceding years and the Court was altogether warranted in finding that it would not be for the best interests of the child to remain in the grandparents' home where Jesse McCoy would likely return for his residence.

Furthermore, the evidence disclosed that the mother of this child was never insane but had been afflicted with epileptic seizures. The medical testimony showed that she had either fully recovered from such epileptic condition or would eventually recover if the medication prescribed for her would be continued. There is some medical testimony that this child might inherit from the mother a tendency toward epilepsy.

The evidence further disclosed that these grandparents of the child and its father had destroyed the medicine which the mother had been taking to control the epileptic seizures with which she had been afflicted.

Furthermore, the evidence disclosed that the grandparents of the child had provided the mother with an apartment in which to live but that as soon as she got that apartment cleaned up and in order they would transfer her to another apartment and keep sending her from one apartment to another for the sole purpose of having her clean up the apartments in which she was temporarily permitted to live. Altogether

it was apparent that the Juvenile Court concluded that the grandparents were attempting to prevent the mother from reestablishing her physical condition to the end that she would not be able to procure an order of the Juvenile Court granting her custody of the child.

The evidence further disclosed that neither the father nor the mother of the child had ever contributed to its support, the father by reason of his unwillingness in that respect, and the mother by reason of her temporary disability due to the epileptic seizures with which she had been afflicted. In that state of the evidence the Juvenile Court found,

"This child is a dependent child. It hasn't received a dime, according to the testimony of Mr. McCoy (the grandfather), from either parent during the time they have had the child. * * *

"The child should certainly receive better treatment, if it should become epileptic, than Mrs. McCoy had while she was living with these people. I appreciate the fact that the grandparents have become quite attached to the child and will become more so if the child is permitted to remain there, but it is the right of parents to have the custody of their child. There isn't anything showing that Mrs. McCoy wouldn't be and hasn't been a proper mother to this child. The child is not going to be institutionalized at all. You can't blame all this on Mrs. McCoy. I might make the observation here that Mr. McCoy, Senior, hasn't had too much success with his family. It is certainly the desire of the Court that this child receive the proper home training. That is the foremost thought the Court has in mind. The Court is concerned only with the welfare of this child and not with how it affects the father or mother or grandparents.

"There is a possibility that Mrs. McCoy (the mother) will one of these days be able to take care of the child. When that time comes I believe she is certainly entitled to it.

&ast; &ast; &ast; &ast; &ast;

"There is not any question in my mind at all but what the Court would have awarded the child to the mother in that case (the divorce), if she had been able to take care of it, but she represented to the Court that she was financially unable to take care of the child and until such time as she is, the Court will make other arrangements.

"The Court finds this child to be a dependent child and instructs the Juvenile branch of the Court to place it in a foster home until such time as the mother or the father or the grandparents or somebody else is in a position to properly take care of it. * * *

"We will refer it to the Catholic Welfare Agency."

This Court of Appeals holds that the Judge of the Division of Domestic Relations properly considered the best interests of the child in making disposition of this case and properly arrived at a decision for the best interest of the child.

However, the appellant here raises another question in this case in which he claims that the Juvenile branch of the Domestic Relations Court had no jurisdiction to make any order with reference to the disposition of this child because no notice had been given to its father,

522

Jesse McCoy. It is true that the statute requires notice to be given to the father of the child before a Juvenile Court may deprive a father of its custody. However, it is the finding of this Court of Appeals that when Jesse McCoy was made defendant in the divorce action in the Domestic Relations Court and was duly served with summons in that action, he was bound with knowledge that the divorce court had jurisdiction to make disposition of the child of the parties to that action. No new action was prosecuted to determine this child to be a dependent child and therefore a notice given to Jesse McCoy in the divorce proceeding was all the notice to which he was entitled. And by his failure to appear in that action he is estopped from now claiming that the Court was without jurisdiction to make the order here complained of.

The judgment of the Juvenile Branch of the Domestic Relations Court is affirmed.

MONTGOMERY, PJ, GRIFFITH, J, concur.